**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:26-CR-47 DRL** |
| | ) | |
| **JUSTIN DAVIS** | ) | |
| **Defendant.** | ) | |

## Motion to Dismiss the Indictment

Defendant Justin Davis, by Assistant Federal Defender Kimberly Schultz, respectfully asks the Court, pursuant to Federal Rule of Criminal Procedure 12(b)(1), to dismiss the indictment charging Mr. Davis with being a felon in possession of a firearm. [DE 1.] Title 18 U.S.C. § 922(g)(1) is unconstitutional, both facially and as applied to Mr. Davis under the Supreme Court's controlling decision, *N.Y. St. Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

## Introduction

The Supreme Court has revolutionized how courts analyze Second Amendment challenges. Mr. Davis recognizes that there are many ongoing good-faith debates about the extent to which *Bruen* and its progeny invalidate various provisions of 18 U.S.C. § 922(g). He also recognizes that this is not the first time that this Court has been asked to weigh in the debate over § 922(g)(1) and that, to date, this Court has ruled against similar arguments. *United States v. Grant*, No. 3:24-CR-68, 2025 WL 2829148, at *2–3 (N.D.

Ind. Oct. 3, 2025). Even so, he makes the following arguments for two reasons. *First*, as a humble invitation for this Court to revisit the issue given the ever-changing landscape of Second Amendment jurisprudence. Even the Solicitor General now agrees that our historical tradition "plainly precludes broad prohibitions that amount to near-total bans on exercising Second Amendment rights." *Brief for the United States*, at 12, United States v. Hemani, (No. 24-1234), 2025 WL 3708950, at *12. Section 922(g)(1) is a just such a broad proscription amounting to a near total ban on Second Amendment rights. *Second*, failing that, to preserve these important constitutional questions for further review. Because the government cannot carry its burden under *Bruen*, Mr. Davis respectfully asks this Court to dismiss the indictment.

**I. Procedural History**

Mr. Davis is charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [DE 1.] The indictment doesn't specify the prior felony. But the Pretrial Services Report suggests that Mr. Davis has the following convictions:

First, at age 18, Mr. Davis was charged with of possession of marijuana (a misdemeanor under Indiana law) and possession of a firearm within 100 feet (charged as a felony), Saint Joseph Superior Court case 71D08-1009-FC-221. Mr. Davis was ultimately convicted of two misdemeanors, possession of marijuana and possession of a handgun

without a license. He was sentenced originally to a term of probation in 2012 and in 2014 his probation was revoked.

At age 18, in 2011, Mr. Davis was charged with criminal trespass was a felony and was convicted of this offense in 2012, 71D08-1111-FD-1106. Thereafter, at age 20, in 2013, he was charged with and convicted of resisting law enforcement with a vehicle, which is a felony under Indiana law, 71D08-1306-FD-527.

According to the Pretrial Services Report, Mr. Davis is a 33-year-old U.S. Citizen and long-time Indiana resident. He is a divorced father of one. At the time of the charged offense, he was a truck driver who had a CDL license. This is Mr. Davis's first criminal case since 2013.

## II. Legal Background

The Second Amendment of these United States proclaims that: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

The Second Amendment has two parts: the prefatory clause and the operative clause. *District of Columbia v. Heller*, 554 U.S. 570, 577 (2008). The operative clause—the phrase "the right of the people to keep and bear Arms, shall not be infringed"—guarantees an individual, preexisting right that "belongs to all Americans" to "possess and carry weapons in case of confrontation." *Id.* at 581, 592. That right is neither unlimited, *id.* at 626–27, nor "second-class." *Bruen*, 597 U.S. at 70.

After *Heller*, the Courts of Appeals adopted a two-part test for firearm regulations. At step one, the challenger had to prove that the regulated activity fell within the Second Amendment's scope. *E.g.*, *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019). At step two, the government could justify the restriction by showing it was "substantially related to an important governmental objective." *United States v. Meza-Rodriguez*, 798 F.3d 664, 672 (7th Cir. 2015).

The Supreme Court soundly rejected this two-step framework generally, and interest balancing specifically. *Bruen*, 597 U.S. at 17; *United States v. Reyna*, --- F.4th ---, 2026 WL 221850, at *3 (7th Cir. Jan. 28, 2026). No longer can the government point to a regulation's value as a reason for its existence. *Reyna*, 2026 WL 221850, at *3. Here, instead, is the exclusive test: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

This new text-and-history test "define[s] the controlling Second Amendment inquiry." *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023). If the plain text applies, "the government must affirmatively prove" that the regulation is consistent with historical firearm regulations. *Bruen*, 597 U.S. at 19. That affirmative proof comes in two varieties, depending on the problem addressed. If the regulation addresses "a general societal problem that has persisted since the 18th century," then the modern regulation must

be "distinctly similar" to historical regulation that addressed the problem by "materially" similar means. *Id.* at 28. But if the modern regulation addresses "unprecedented societal concerns or dramatic technological changes," then the question becomes whether there is a "relevantly similar" historical analogue. *Id.* at 29.

Now, the *Bruen* test doesn't require that modern regulations be "identical to ones that could be found in 1791." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). But the *Bruen* test does require a rigorous analysis of "[w]hy and how the regulation" burdens Second Amendment rights. *Id.* (citing *Bruen*, 597 U.S. at 29). If the regulation flunks either the "why" or the "how" part of the test, then it is not justified by a relevantly similar historical analogue. *Schoenthal v. Raoul*, 150 F.4th 889, 907 (7th Cir. 2025).

What sort of historical evidence does *Bruen* require the government to produce? Evidence that reveals the scope of the Second Amendment right as understood by the people who adopted it. *Bruen*, 597 U.S. at 34. Neither ancient historical practice—i.e., restrictions that long predate 1791—nor "postenactment history" shed much light on the critical question of the original "public understanding of the Second Amendment after its ratification." *Id.* at 34 & 35 (quoting *Heller*, 554 U.S. at 605 (cleaned up)). In that way "not all history is created equal." *Id.* at 34. Rather, the government's burden is to muster evidence that demonstrates "the public understanding of the [Second Amendment] right when the Bill of Rights was adopted in 1791." *Id.* at 37.

Federal firearm regulations are novel inventions within the scope of American history. *Heller*, 554 U.S. at 625; *see United States v. Skoien*, 614 F.3d 638, 640–41 (7th Cir. 2010) (en banc) (discussing the recent vintage of federal firearms laws). The first federal felon-dispossession statute was enacted in 1938 and prohibited those "convicted of a crime of violence" from receiving guns that had crossed state lines (with possession being evidence of receipt). Pub. L. No. 75–785, Ch. 850, 52 Stat. 1250, 1251, § 2(f). In the 1960s, Congress twice revised the law to cover most crimes punishable by more than a year in prison. *See An Act To Strengthen The Federal Firearms Act*, Pub. L. No. 87-342, 75 Stat. 757 (1961); *Omnibus Crime Control and Safe Streets Act of 1968*, Pub. L. No. 90-351, Title IV, § 906, Ch. 44, 82 Stat. 197, 231 (1968).

The modern felon-dispossession statute, 18 U.S.C. § 922(g)(1), emerged as part of the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 (1968). Section 922(g)(1) bars "any person … who has been convicted of a crime punishable by imprisonment for a term exceeding one year" from possessing "any firearm." It is, in short, a total "prohibition[] on the possession of firearms by felons." *Range v. Att'y Gen.*, 124 F.4th 218, 229 (3d Cir. 2024) (en banc) (quoting *Heller*, 554 U.S. at 626) (brackets original).

**III. Argument**

Given § 922(g)(1)'s recent vintage and shallow historical roots, there is no "longstanding" tradition of disarming felons. *Id.* (citing first *Bruen*, 597 U.S. at 34, 59–60, and then citing *Rahimi*, 602 U.S. at 692 & n.1). As noted by then-Judge Barrett, no

"historical practice supports a legislative power to categorically disarm felons because of their status as felons." *Kanter*, 919 F.3d at 458 (Barrett, J., dissenting). Because the government cannot show that § 922(g)(1) is constitutional as applied to Mr. Davis, this Court should dismiss the indictment.

**A. The Second Amendment's plain text applies to Mr. Davis and protects his conduct.**

Returning to the first inquiry *Bruen* directs, it's clear that the Second Amendment covers Mr. Davis and his firearm possession. Recall, the Second Amendment protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. Mr. Davis is among "the people," and § 922(g)(1) regulates his ability to "keep and bear Arms."

*1. Mr. Davis is among "the people" protected by the Second Amendment.*

Mr. Davis was born in South Bend, Indiana, and is a life-long Indiana resident. He is, in short, an American. As such, he is among "the people" guaranteed the full panoply of rights protected by the Second Amendment. *Bruen*, 597 U.S. at 70 ("The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to reasonable, well-defined restrictions." (quoting *Heller*, 554 U.S. at 581)).

Indeed, the Seventh Circuit has recently held that felons are "the people." *United States v. Watson*, 171 F.4th 1012, 1017-18 (7th Cir. 2026). Despite a felony conviction, which may dispossess felons of other rights, including the right to vote, this doesn't strip felons of *all* their individual rights. *Id*. at 1018. Thus, Mr. Davis is a member of the national "political community" and one of "the people." *Id*. *citing Heller*, 554 U.S. at 580.

2. *Mr. Davis is prohibited by § 922(g)(1) from keeping and bearing Arms.*

The indictment alleges that Mr. Davis unlawfully possessed a firearm; the discovery alleges that he possess a Tec 9 pistol. Section 922(g)(1) thus purports to strip Mr. Davis of his right to keep and bear a quintessential arm. *Heller*, 554 U.S. at 581–82; *see also, e.g., Zherka*, 140 F.4th at 76 ("Section 922(g)(1) clearly covers conduct that the Second Amendment presumptively protects"); *Diaz* 116 F.4th at 467 (same); *Williams*, 113 F.4th at 650 (same).

**B. There is no historical tradition supporting the complete and total disarmament of felons as felons.**

The Supreme Court in *Bruen* made the text-and history test "exclusive." *Reyna*, 2026 WL 221850, at *3. But "[h]istory does not support the proposition that felons lose their Second Amendment rights solely because of their status as felons," *Kanter*, 919 F.3d at 464 (Barrett, J., dissenting), so the government cannot "justify [§ 922(g)(1)] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation," *Bruen*, 597 U.S. at 24.

Section 922(g)(1)'s unconstitutional applications far exceed its otherwise lawful sweep. As the Fifth Circuit has explained, there are just "three categories of offenses that doom a defendant's as-applied challenge … theft, violence, and violating the terms of one's release by possessing arms while on parole." *United States v. Hernandez*, 159 F.4th 425, 528 (5th Cir. 2025). But § 922(g)(1) applies to felony convictions of nearly infinite variety without regard for the danger that the person poses today. That's why federal

courts have begun invalidating § 922(g)(3) as applied to many defendants. *E.g.*, *Range*, 124 F.4th at 230–32 (food stamp fraud); *Cockerham*, 162 F.4th at 506 (failing to pay child support); *United States v. Hembree*, 2026 WL 217125, at *8 (5th Cir. Jan. 27, 2026) (possessing methamphetamine).[1] No law in the First Amendment context could violate the rights of so many people in so many ways and be deemed facially constitutional. So too here. The substantial overbreadth of § 922(g)(1), combined with the fact that the Second Amendment is no second-class right, points to its facial invalidity.

Mr. Davis acknowledges the very recent Seventh Circuit opinions in *Watson*, *supra*, and in *United States v. Prince*, 171 F.4th 1009 (7th Cir. 2026) foreclose facial challenges to the constitutionality of Section 922(g)(1). For the purpose of this motion, he maintains that these cases were wrongly decided and wishes to preserve this issue for Supreme Court review.

### C. Even if § 922(g)(1) is valid on its face, it is unconstitutional as applied to Mr. Davis.

The indictment doesn't specify a felony predicate that gives rise to the § 922(g)(1) charge. But Mr. Davis's only possible predicate offenses are criminal trespass and resisting law enforcement with a vehicle. The government cannot prove that there are a

---

[1] Examples proliferate. *See also, e.g.*, *United States v. Doucet*, 2025 WL 3515405 (5th Cir. Dec. 8, 2025) (nonprecedential) (marijuana cultivation); *United States v. Perez*, --- F. Supp. 3d ---, 2025 WL 3209228 (W.D. Pa. Nov. 14, 2025) (manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance); *United States v. Williams*, --- F. Supp. 3d ---, 2025 WL 2969670 (S.D. Ill. Oct. 21, 2025) (aggravated battery and unlawful restraints); *United States v. Banks*, 793 F. Supp. 3d 896 (N.D. Ohio, 2025) (attempted possession of crack cocaine); *United States v. Gomez*, 773 F. Supp. 3d 257 (N.D. Tex. 2025) (marijuana possession).

founding-era history and tradition of total, life-long disarmament for a person with those sorts of prior convictions. *United States v. Williams*, --- F. Supp. 3d ---, 2025 WL 2969670 (S.D. Ill. Oct. 21, 2025).

There is no relevant historical support for a total, life-long ban on firearm possession by a person in Mr. Davis's shoes. And that's true whether this Court looks for "distinctly similar" historical analogues as in *Bruen*, 597 U.S. at 26, or "relevantly similar" analogies as in *Rahimi*, 602 U.S. 691–92. Either way, this approach to analogical reasoning is "neither a regulatory straightjacket nor a regulatory blank check." *Bruen*, 597 U.S. at 30.

Section 922(g)(1), as applied to Mr. Davis, cannot meet either part of the "why" and "how" test. It is unconstitutional because its purpose is novel (the why) and imposes a far greater burden than any possible analogue (the how). *Rahimi*, 602 U.S. at 692; *United States v. Connelly*, 117 F.4th 269, 274 (5th Cir. 2024) (holding that historic analogues must "share a common 'why' and 'how': they must both (1) address a comparable problem (the 'why') and (2) place a comparable burden on the right holder (the 'how')."). Understood at the correct level of generality, the "principles that underpin our regulatory tradition" do not permit a categorical, lifelong ban on firearm possession by persons convicted over a decade earlier of a felony—at least absent a judicially imposed, present-tense finding of dangerousness. *Rahimi*, 602 U.S. at 691, 698–99.

In *Rahimi*, the Supreme Court went out of its way to emphasize that § 922(g)(8) was constitutional because it temporarily disarmed "those found by a court to present a threat to others." *Id.* at 698; *see also id.* at 699, 702 (emphasizing the temporary nature of the disarmament). In other words, though there is historical support for less-extreme measures when accompanied by a judicial determination of danger, *id.* at 700, there is no historical support for broadly disarming swaths of the populus. *See* William Baude & Robert Leider, *The General-Law Right to Bear Arms*, 99 Notre Dame L. Rev. 1467, 1511 (2024) ("[S]omething like the dangerousness principle would give the Court a tractable way to adjudicate the lawful scope of [§ 922(g)(1)]. If the dangerousness principle is the lodestar, a complete lifetime ban on possession of a firearm by any felon is plainly too broad.").

As the Sixth Circuit explained in *Williams*, when evaluating an as-applied challenge, courts should "assess[] a defendant's dangerousness" to ensure modern laws are applied consistently with the *Bruen* test. 113 F.4th at 660. Though prior convictions are important to that assessment, they cannot be dispositive. *See id.* at 658–60. When considering whether a prior conviction points to present-tense dangerousness, temporally remote offenses "should be given less weight." *United States v. Jennings*, 754 F. Supp. 3d 763, 770 (E.D. Mich. 2024) (applying Williams); *accord United States v. Norris*, No. 3:23-cr-572, 2024 WL 4816246, at *7 (N.D. Ohio Nov. 18, 2024).

All in, the government must prove the validity of § 922(g)(1) as applied to Mr. Davis. No history supports Section 922(g)(1)'s total, lifelong ban on firearm possession by a person whose only felony convictions are over a decade old. At the time of his two convictions, he was a very young man. He's now a thirty-five-year-old father who presents no current risk of danger to anyone. And under *Watson*, *Rahimi*, and *Hemani*, the government has to demonstrate that Mr. Davis is a current risk of danger. *Hemani* counsels that current evidence-based dangerousness must be the guiding principle. *See United States v. Hemani*, 608 U.S. ---, 146 S.Ct. 1677, 1692 (2026) (explaining that individuals who are violent and unusually dangerous can be disarmed). They cannot do so given the types of convictions at issue and given the age of the convictions.

Nor is there any support for the categorical, permanent disarmament of a person for whom there is no judicial determination of dangerousness. In fact, in light of the decision in *Prince*, there is an open question as to whether a total ban on firearm possession is constitutional. *Prince*, 171 F.4th at 1011-12. *Watson* also doesn't foreclose the possibility that Mr. Davis's prior non-dangerous felonies should result in a permanent ban on his right to possess a firearm. *Watson*, 171 F.4th at 1024.

## Conclusion

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even

future judges think that scope too broad." *Heller*, 554 U.S. at 635. The Second Amendment is no parchment guarantee; it is, instead, a right "*really worth* insisting upon." *Id.* In this case, the Second Amendment prohibits Mr. Davis's prosecution under 18 U.S.C. § 922(g)(1), so he respectfully asks this Court to dismiss the indictment.

Dated: July 29, 2026

Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

By: s/ Kimberly Schultz
Kimberly Schultz, Staff Attorney
130 S. Main Street, Suite 300
South Bend, IN 46601
Phone: (574) 245-7393
Fax: (574) 245-7394
eMail: Kimberly_schultz@fd.org